**DUNN et al. v. TENNANT.**

No. 11956.

Court of Civil Appeals of Texas. Dallas.

April 6, 1935.

Rehearing Denied May 11, 1935.

See, also, 68 S.W.(2d) 269.

Fred J. Dudley, of Dallas, for appellants.

Muse & Muse and J. C. Muse, Jr., all of Dallas, for appellee.

JONES, Chief Justice.

In a suit in a district court of Dallas county against the Indian State Oil Company of Dallas, a joint stock company, and in which suit there were a number of pleas in intervention, including appellants, Mrs. Emma Louisa Dunn, joined pro forma by her husband, C. V. Dunn, joined also by Fred J. Dudley, attorney for Mrs. Dunn, and the owner and assignee of a certain in-

terest in Mrs. Dunn's cause of action, Roger L. Tennant was duly appointed receiver on December 1, 1931, and has been such receiver since said time. In her plea of intervention, Mrs. Dunn set up a claim as owner of an interest in an oil and mineral lease to 5½ acres of land in Rusk county, Tex., as purchaser from Indian State Oil Company.

The trial court appointed a master in chancery, and duly referred the claim of Mrs. Dunn to such master, with power to determine the character of her claim and report his findings thereon. The master made a report on the claim and later a supplemental report, in which Mrs. Dunn's claim, as owner of an interest in the lease, was denied, but the claim was allowed in the sum of $25,000 and directed that it be paid out of any proceeds in the estate of the Indian State Oil Company prior to the payment of any dividends or income out of the estate in favor of the unit holders. The master further directed that general creditors for material, supplies, services, labor, and the like, furnished in the ordinary course of business of the Indian State Oil Company, who filed their claims in intervention herein, be given priority to the claim of Mrs. Dunn. Appellants duly excepted to both findings of the master and to his conclusions of law, and by proper pleading brought the matter before the court for adjudication.

After a hearing before the court, on the exceptions of appellants, and the answer to such exceptions by the receiver, the court entered a judgment, substantially in compliance with the findings of the master and his conclusions of law. From the judgment on Mrs. Dunn's claim, appellants have duly perfected their appeal to this court.

The questions involved in this appeal grow out of the construction of an instrument duly executed by the Indian State Oil Company to Mrs. Dunn, under which she paid to the Indian State Oil Company the consideration of $5,000, and on which she bases her claim as holder of an interest in the lease of the property described in the instrument. If such instrument conveys an interest in said lease, then the judgment of the court is in error; but if, as construed by the court, it only represents a purchase from the Indian State Oil Company of so much oil produced, then the judgment of the court is substantially correct. The case, therefore, is determined by the construc-

tion to be given said instrument, which is as follows:

"Whereas, on the 12th day of September, A. D. 1930, a certain oil and gas lease was made and entered into by and between Columbus Redwine and wife, Minnie Redwine, and H. L. Williford, covering the following described land in the county of Rusk, Texas, to-wit:

"Five and one-half (5½) acres of an eight and two-thirds (8⅔) acre tract, same being a part of the east one-third (⅓) of the North one-half (½) of the Lum Taliaferro 52.6 acre tract of the Juan Ximines Survey in Rusk County, Texas, said lease being recorded in the office of the County Clerk of said County in book No. 152, page 11, of the Deed Records of said county;

"And, whereas, seven sixteenths (7/16) of said lease and all rights thereunder or incident thereto, are now owned and held by the Indian State Oil Company of Texas,

"Now, therefore, for and in consideration of the sum of Five Thousand Dollars (5,000) in cash paid by Mrs. Emma Louisa Dunn out of her own separate funds, the receipt of which is hereby acknowledged, the Indian State Oil Company of Texas, a joint stock company, the present owner of seven sixteenths of said lease and all rights thereunder or incident thereto, does hereby bargain, sell, transfer, assign and convey all the right, title and interest of the original lessee and present owner in and to said lease and all rights thereunder insofar as it covers and only covers twenty-five thousand dollars ($25,000) worth of oil at the market price thereof at Joinerville, Texas, out of and from five forty-eighths (5/48) of Seven Eighths (7/8) of the oil produced from said well shall be delivered at such market price, free of any charges and/or expenses of production or operations of said property to Mrs. Emma Louisa Dunn of Ennis, Texas, her heirs, successors and assigns, and her own separate property for her separate use and benefit.

"And, for the same consideration, the undersigned, for itself, its successors and assigns does covenant with said assignee, her heirs, succesors and assigns that it, the said Indian State Oil Company of Texas, is the lawful owner of Seven Sixteenths (7/16) of said lease and the rights and interests thereunder; that the undersigned has good right and authority to sell and convey the same and the said rights and interests are free and clear from all liens

and encumbrances and that all rentals and royalties thereunder have been duly paid.

"In witness whereof, said Indian State Oil Company of Texas has caused this instrument to be signed by its duly authorized President to execute same, this the 18th day of June, A. D. 1931.

"Indian State Oil Company of Texas
"By [Signed] J. W. Sappington,
"President.

"[Seal]
"Attest:
"R. G. Pender [Signed], Secretary."

This instrument was duly acknowledged and filed for record with the county clerk of Rusk county on June 25, 1931, and placed of record July 15, 1931.

It is the settled law of Texas that oil and gas in place are a part of the realty and may be conveyed as any other interest in land. Sibley v. Pickens (Tex. Civ. App.) 273 S. W. 897, 898, and authorities therein cited. It is generally held in this state that an oil and gas lease, when given in the usual form, is the conveyance of an interest in land and, as such, operates to sever the mineral estate from that of the surface. 31 Tex. Jur. § 39, page 574; State v. Hatcher, 115 Tex. 332, 281 S. W. 192; Jones v. Murphy (Tex. Civ. App.) 253 S. W. 634, 635; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566, and other authorities cited in notes to Texas Jurisprudence, supra.

On September 12, 1930, the original lease on the 5½ acres of land was executed, and thereby the estate in oil and gas was severed from the surface estate and vested in the lessee. Through mesne conveyances, the Indian State Oil Company of Texas became the owner of a 7/16 interest in the oil and gas of said 5½ acres of land. Development of the property for oil had begun, when on June 18, 1931, Mrs. Dunn invested with the Indian State Oil Company the sum of $5,000 in this lease. The consideration given to Mrs. Dunn for this money, to be used in the improvement of the lease, is shown by the instrument above quoted. Did it convey to Mrs. Dunn an interest in the realty, owned by the Indian State Oil Company, as contended by Mrs. Dunn; or did it constitute only an obligation on the part of the Indian State Oil Company to pay $25,000 out of 5/48 of 7/8 of the oil produced from the well, as in effect found by the trial court? The question thus presented must be determined, if possible, from the instrument itself.

The instrument describes the 5½ acres of land and recites the execution of the original lease and that 7/16 of said original lease was then owned and held by the Indian State Oil Company, and then declares, "Now, therefore, for and in consideration of the sum of $5000 in cash paid by Mrs. Emma Louisa Dunn * * * the Indian State Oil Company of Texas, a joint stock company, the present owner of 7/16 of said lease and all rights thereunder or incident thereto, does hereby bargain, sell, transfer, assign and convey all the right, title and interest of the original lessee and present owner in and to said lease and all rights thereunder. * * *"

If the instrument stopped at the end of the above-quoted portion, there could be no question but that it would be a conveyance of the oil and gas in place, as realty; in other words, it would be a full conveyance of the Indiana State Oil Company's interest in the land, which was the oil and gas in place. It was not, however, the intention of the parties that Mrs. Dunn should have transferred to her all of the Indian State Oil Company's interest in this lease. Hence, the language above quoted is immediately followed by "insofar as it covers and only covers twenty-five thousand dollars ($25,000) worth of oil at the market price thereof at Joinerville, Texas, out of and from five forty-eighths (5/48) of Seven Eighths (7/8) of the oil produced from said well shall be delivered at such market price. * * *" Was it the purpose of these last quoted words to destroy the conveyance of real estate, clearly given in the first quoted provision of the contract? We think not. Otherwise, the instrument would not with such care have employed language that imports a conveyance of interest in land. Rather, we think its purpose is to limit such conveyance to a specifically described part of the lease estate, i. e., instead of passing the entire title to the lease to Mrs. Dunn, it provides that the estate in the land thus conveyed shall end, when Mrs. Dunn has been delivered $25,000 worth of oil, taken from 5/48 of 7/8 of the oil produced from said well. The interest conveyed is then to revert to the grantor, the Indian State Oil Company. Any other construction thereof would destroy, and not limit, the language, "does hereby bargain, sell, transfer, assign and convey all the right, title and interest of the original lessee and present owner in and to said lease. * * *"

We therefore hold that the instrument in question conveys to Mrs. Dunn $\frac{5}{48}$ of $\frac{7}{8}$ of the oil in place, limited to $25,000 worth of oil, if and when it is extracted, and as the undisputed evidence shows that, of the oil sold from well No. 1, $3,240.35 represents the interest of Mrs. Dunn, and as the undisputed evidence further shows that the receiver now has on hand more than sufficient money to make this payment, he should be directed to pay said sum to Mrs. Dunn and her attorney of record, divided between them in accordance with the attorney's contract.

We are also of opinion that the receiver should be directed to pay whatever sum represents $\frac{5}{48}$ of $\frac{7}{8}$ of the oil produced from well No. 1 from September 30, 1934, until the receivership ends, or Mrs. Dunn has received her interest of $25,000, and we reverse the judgment of the lower court and enter judgment in accordance with this view.

The construction placed on the instrument in question renders it unnecesary to discuss other questions raised on this appeal.

Reversed and judgment rendered for appellants.

LOONEY, J., did not sit in this case.